IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JARED ASHLEY LOGGINS,           )
                                )
        Plaintiff,              )
                                )
vs.                             )   NO. CIV-04-922-T
                                )
CLEVELAND COUNTY, a political   )
  subdivision sued in the name of THE )
  BOARD OF COUNTY COMMISSIONERS )
  FOR CLEVELAND COUNTY,         )
                                )
        Defendant.               )

ORDER

Before the court is the motion [Doc. No. 37] of defendant Board of Commissioners of Cleveland County for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff timely responded to the motion, and the parties have filed additional briefs. Also before the court is defendant's motion [Doc. No. 70] to strike certain evidentiary material contained in plaintiff's sur-reply brief.

Although the sur-reply brief relies in part on testimony of witnesses not discussed in the parties' earlier briefs, plaintiff's application to file a sur-reply expressly advised the court that such testimony resulted from depositions of witnesses identified by defendant and taken after the response brief was filed. Plaintiff submitted legal authority supporting his request to include this testimony as part of his sur-reply brief. The court approved the application to file the reply brief; in doing so, the court determined that the inclusion of the testimony was proper in accordance with Fed.R.Civ.P. 56(c). Although the court has not placed significant emphasis on the challenged testimony in ruling on the motion for summary judgment, it is properly submitted; the motion to strike [Doc. No. 70] is DENIED.

Plaintiff alleges that he was subjected to unlawful racial discrimination in connection with his former employment as a Cleveland County Deputy Sheriff. His claims arise under 42 U.S.C. § 1981 and § 1983 and Title VII of the Civil Rights Act of 1964 ("Title VII"). Specifically, he alleges that his employment termination was motivated by race discrimination and that defendant retaliated against him because he exercised rights protected by Title VII. Although the complaint also includes allegations that defendant failed to promote plaintiff on two occasions and defendant addressed that claim in its motion, plaintiff expressly states in response that he does not assert a cause of action based on failure to promote. Plaintiff's response brief, p. 14. Additionally, defendant argued in its motion that, to the extent plaintiff alleges that he was subjected to a racially hostile work environment, that contention is not supported by the undisputed facts. Plaintiff does not address that argument in his response. Although the complaint arguably includes such claim, plaintiff's failure to respond to same, coupled with the undisputed evidence in the record, establishes that plaintiff cannot support a cause of action based on a racially hostile work environment[1]. To the extent that the complaint attempts to state a claim for a Title VII violation based on

---

[1] To overcome summary judgment on a claim of hostile environment based on race, plaintiff must show that" under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and (2) the harassment was racial or stemmed from racial animus." Trujillo v. University of Colorado Health Sciences Center, 157 F.3d 1211, 1214 (10th Cir. 1998), citing Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994). To evaluate the first prong of the claim, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Trujillo, 157 F.3d at 1214, quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Generally, the question is "whether the quantity, frequency, and severity of the racial, ethnic, or sexist slurs create a work environment so hostile as to discriminate against the minority employee." Trujillo, 157 F.3d at 1214, citing Vore v. Indiana Bell Tel. Co., 32 F.3d 1161, 1164 (7th Cir. 1994). The record in this case contains no evidence that would satisfy these requirements.

failure to promote or a racially hostile work environment, defendant is entitled to judgment on such claims. The court will address herein the remaining claims of discriminatory termination and retaliation for the exercise of rights protected by Title VII.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is proper where the undisputed material facts, supported by evidentiary material, establish that a party is entitled to judgment as a matter of law. A material fact is one which may affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). To dispute a material fact, plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for him. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to plaintiff. Simms v. State of Oklahoma, 165 F3d 1321, 1326 (10th Cir. 1999). If the undisputed facts establish that plaintiff cannot prove an essential element of a cause of action, defendant is entitled to judgment on that cause of action. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The parties agree that plaintiff is an African American male who was hired as a Cleveland County Deputy Sheriff effective February 8, 2001. At that time, another African American male was hired as a Deputy Sheriff. The hiring decision was made by Cleveland County Sheriff F. DeWayne Beggs ("Sheriff Beggs"). It is also undisputed that, on February 14, 2002, plaintiff received a pay increase recommended by Capt. L.W. McKiddy ("Capt. McKiddy"). On August 23, 2002 plaintiff requested placement on the Honor Guard and Entry Team, a request that was approved by Sheriff Beggs on August 26, 2002.

It is also undisputed that plaintiff was promoted to the position of corporal on December 9, 2002 and that his employment was terminated on April 16, 2003. At the time of his termination, there were six

other African American employees in the Cleveland County Sheriff's Department, which had a total of approximately 100 to 110 employees.

The parties also agree that, during plaintiff's employment, he never received a written warning or other disciplinary action which affected his salary or employment benefits. He received only one written counseling form, which resulted from a January 25, 2003 incident in which he left his vehicle running and unattended, an infraction of the Sheriff's Office Policy and Procedures, #35. This written form did not, however, adversely affect his employment, salary or benefits. It is also undisputed that plaintiff was the subject of four citizen complaints, that each complaint was investigated, and that he was exonerated of any wrongdoing in connection with each complaint. With respect to one of these complaints, he was verbally admonished about his admitted use of vulgar language. However, that admonition did not result in formal disciplinary action or affect his employment status in any way. Prior to his termination, plaintiff never received a formal reprimand or warning about his conduct. Sheriff Beggs' dep., plaintiff's Ex. 16, p. 25, lines 19-25; p. 26, lines 1-2.

The record reflects, and the parties agree, that plaintiff was promoted to the rank of corporal on December 9, 2002. The parties also agree that plaintiff had twice previously requested a promotion and had not been selected[2].

It is not disputed that Sheriff Beggs made the decision to terminate plaintiff's employment on April

---

[2]Although defendant discusses at length the written policies and procedures regarding promotions as well as the established selection criteria where multiple candidates apply, such evidence need not be addressed herein because plaintiff expressly states he does not assert a claim based on his failure to be promoted. Neither does he argue that such failure is evidence that he was the victim of discriminatory termination or retaliation.

16, 2003 and that plaintiff was not given a reason for his termination; he was told by Undersheriff Roy Bugher[3] that his services were no longer needed. However, Sheriff Beggs states in an affidavit that he decided to terminate plaintiff because he determined that plaintiff's behavior had been "contemptuous, disrespectful, neglectful, and insubordinate." Sheriff Beggs affidavit, defendant's Ex. A, ¶ 28. According to Beggs, that determination was based on three incidents. Beggs' Affidavit, defendant's Ex. A, ¶¶ 23-27. The first was reported in a March 25, 2003 memorandum to Capt. McKiddy from Detective Dunbar in which Dunbar stated that plaintiff had chewed out subordinates in front of two citizens, had called a suspect an "asshole" in the presence of the suspect's wife, had driven in what Dunbar believed was an unsafe manner, and had made comments interpreted by Dunbar as reflecting that plaintiff did not like working with reserve deputies[4]. The second incident involved an April 7, 2003 supplemental report by plaintiff reflecting his initial investigation of an alleged rape. The investigator assigned to the rape case asked plaintiff to further supplement the report, and Sheriff Beggs considered plaintiff's written response insufficient and inadequate; he also interpreted some of plaintiff's written comments as curt and sarcastic[5]. The third incident is reflected in an April 16, 2003 memorandum from Capt. McKiddy to Beggs reporting an April 15, 2003 attempt to page plaintiff to assist in serving a search warrant. According to Beggs, McKiddy

---

[3]Beggs testified that, although he made the decision to terminate plaintiff, he did not personally meet with plaintiff to inform him of his termination. Instead, Undersheriff Bugher and Capt. McKiddy did so. Beggs dep., plaintiff's Ex. 16, p. 20, lines 6-15.

[4]The Dunbar memorandum is submitted as Exhibit 4 to the Beggs affidavit, defendant's Ex. A.

[5]Plaintiff's Supplement to his report is submitted as Exhibit 5 to Beggs' affidavit, defendant's Ex. A. The request for additional information and plaintiff's handwritten response to that request is submitted as Exhibit 5 to the Beggs affidavit, defendant's Ex. A.

advised that plaintiff did not respond to the page for seven hours because he did not have his pager with him; Beggs considered plaintiff's failure to respond as displaying poor judgment as well as inattention to duty and neglect of duty. Beggs Affidavit, ¶ 27.

When plaintiff was terminated on April 16, 2003, none of these incidents was mentioned to plaintiff. Beggs' dep., p. 21, lines 13-16; p. 21, lines 23-25, plaintiff's Ex. 16. Plaintiff asked why he was being terminated, and he was told that his services were no longer needed. *Id.*, p. 21, lines 5-12. Sheriff Beggs did not show plaintiff the memoranda on which Beggs' decision was based, and plaintiff was never asked to explain the incidents. Beggs' dep., plaintiff's Ex. 16, p. 22, lines 15-20; p. 23, lines 3-10. Beggs did not know if anyone else in the department had shown plaintiff the memoranda or asked him to explain any of the incidents. *Id.,* p. 22, lines 15-25; p. 23, lines 1-25. According to Beggs, the usual procedure is to allow an officer receiving a written reprimand to review the writing and respond; Beggs did not follow this procedure in plaintiff's case because Beggs did not consider the memoranda on which he based his decision as written reprimands. Beggs dep., plaintiff's Ex. 16, pp. 24-25.

Following plaintiff's April 16, 2003 termination, Sheriff Beggs asked other department personnel department to submit written reports or memoranda concerning the three incidents described above or any other incidents involving plaintiff; according to Beggs, he did so to "complete his file."[6] Beggs dep., plaintiff's Ex. 16, p. 33, lines 23-25; pages 34-38. Plaintiff was not made aware of these post-termination reports and memoranda; neither was he informed of the incidents reflected therein or given an opportunity

---

[6] In a subsequent portion of his deposition, Sheriff Beggs testified that the undersheriff had asked department personnel to document any pre-termination incidents involving plaintiff; however, Beggs had asked the undersheriff to insure that plaintiff's file be "completed." Beggs dep., page 43, lines 3-25, page. 44, lines 1-6.

6

to respond. Prior to this time, plaintiff's personnel file contained no disciplinary memoranda reflecting complaints from superior officers or other officers about plaintiff's job performance[7]. Beggs dep., plaintiff's Ex. 16, p. 25-26.

During his employment with the Sheriff's department, plaintiff never made a formal complaint of race discrimination with the Equal Employment Opportunity Commission ("EEOC"). Neither did he submit an internal complaint based on race discrimination or unequal treatment in connection with his employment.

Plaintiff's claims under Title VII, § 1981 and § 1983[8] are all subject to the burden of proof allocation set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Salguero v. City of Clovis, 366 F.3d 1168, 1175 (10th Cir. 2004), citing Randle v. City of Aurora, 69 F.3d 441, 450 (10th Cir.1995); see also, Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir.1991) ("[T]he elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in McDonnell Douglas, whether that case is brought under §§ 1981 or 1983 or Title VII."). The same burden-shifting analysis applies to plaintiff's retaliation and termination claims. Thus, with respect to each claim, plaintiff bears the burden of proving a *prima facie* case through evidence supporting the essential elements of that claim. McDonnell Douglas, 411 U.S. at 802-04. The burden then shifts to defendant to produce evidence that its actions were based on legitimate, non-discriminatory reasons; if defendant does so, plaintiff bears the burden of proving that defendant's proffered reasons are a pretext for discrimination. *Id.*

---

[7] The only such document referenced by defendant is a counseling memorandum regarding the January 2003 incident when he left his vehicle running and unattended.

[8] Although the parties recognize that the burden-shifting analysis is the same with respect to these claims, they do not include in their briefs arguments related to *§§1981 or 1983*.

Retaliation for the exercise of rights protected by Title VII:

To establish a *prima facie* case of unlawful retaliation pursuant to Title VII, plaintiff must show that: 1) he engaged in protected opposition to a discriminatory employment practice; 2) he suffered a subsequent adverse employment action; and 3) there is a causal connection between his protected activity and the adverse action. Wells v. Colorado Dept. of Transportation, 325 F.3d 1205m 1212 (10th Cir. 2003); Robbins v. Jefferson County Sch. Dist., 186 F.3d 1253, 1258 (10th Cir. 1999).

Defendant does not dispute that plaintiff's termination is an adverse employment action. Therefore, the issues are whether plaintiff has presented sufficient evidence to show that he engaged in protected opposition to a discriminatory employment practice and, if so, whether he has submitted sufficient evidence to show a causal connection between his opposition and his termination.

The requisite element of opposition to a discriminatory employment practice may be satisfied by an informal complaint to a superior. Hertz v. Luzenac America, Inc. 370 F.3d 1014, 1015 (10th Cir. 2004); O'Neal v. Ferguson Const. ?Co., 237 F.3d 1248, 1255 (10th Cir. 2001); Pastran v. K-Mart, Corp., 210 F.3d 1201, 1205 (10th Cir.2000). Therefore, the fact that plaintiff admittedly did not file a written or formal complaint does not defeat his claim. However, the informal complaint must identify some form of conduct based on a status protected by Title VII, e.g., race or gender; thus, a complaint about the employer's unfair treatment in general does not constitute the opposition required to establish a *prima facie* case of retaliation. O'Neal, 237 F.3d at 1255. Furthermore, the informal complaint must involve an employment practice, as the retaliation prohibitions of Title VII do not apply unless the complaint involves an unlawful employment practice. *See, e.g.,* Artis v. Francis Howell North Band Booster Ass'n,

161 F.3d 1178, 1182-83 (8th Cir. 1998) (an employee's opposition to alleged race discrimination involving student discipline was not protected opposition because no employment issue was involved); Evans v. Kansas City, Missouri School Dist., 65 F.3d 98, 100-01 (8th Cir. 1995), *cert. denied,* 517 U.S. 1104 (1996). (employee's complaint about a desegregation plan was not protected because it did not constitute opposition to racial discrimination by an employer). However, plaintiff need not establish that his employer actually discriminated against him; he need only show that, at the time, he had a reasonable good-faith belief that the conduct he opposed was a discriminatory employment practice. Hertz v. Luzenac America, Inc., 370 F.3d 1014, 1015 -1016 (10th Cir. 2004), *citing* Crumpacker v. Kansas Dep't of Human Res., 338 F.3d 1163, 1172 (10th Cir.2003).

In the complaint, plaintiff alleges that he engaged in protected opposition when he "complained" in October or November 2001 that he was "being treated differently because of his race." Complaint, ¶ 10. However, the record reflects that plaintiff's protected opposition claim is based on two conversations in which he expressed his belief that Capt. McKiddy was a racist: 1) a September 2002 conversation in which plaintiff told Capt. McKiddy that he believed McKiddy was a racist because of a comment by McKiddy the previous year; and 2) a late March or early April 2003 conversation in which plaintiff told Sgt. Bruce Reynolds that plaintiff believed McKiddy was a racist.          Plaintiff's belief that McKiddy was a racist is based on a statement made by McKiddy in September 2001. According to plaintiff, during an informal conversation sometime after September 11, 2001, plaintiff told McKiddy that a "really crazy" man arrested by plaintiff had said that, when released, he would send plaintiff to his plantation to "pick cotton." Plaintiff's dep., defendant's Ex. E, p. 37, lines 3-14. Plaintiff testified that McKiddy replied, "Well, did you tell him you ain't a cotton picker no more?" *Id.,* lines 15-17.    Although plaintiff regarded this comment as

9

a highly offensive racial slur, he testified that he did not complain to McKiddy at the time; neither did he complain or mention it to anyone else in the department until "at least" a year later. Plaintiff's dep., defendant's Ex. E, p. 39, lines 11-23. According to plaintiff, during a conversation the following year, McKiddy said he had heard that plaintiff did not like him, and insisted plaintiff explain why; plaintiff told him he believed McKiddy was a racist because of the "cotton picker" statement. *Id.,* p. 41, lines 20-25; p. 42, lines 13-19. Plaintiff also testified that he told McKiddy he had not said anything earlier because plaintiff was afraid he would lose his job. Plaintiff's dep., plaintiff's Ex.24, p. 41, lines 20-25; p. 42, lines 1-4. McKiddy told plaintiff he was not a racist, and said he thought plaintiff "took it the wrong way." *Id.*, lines 20-22. Plaintiff also testified that McKiddy "spent the rest of my employment there trying to convince me that he wasn't a racist." *Id.*, p. 43, lines 2-7.

The only adverse employment event occurring after this conversation was his April 16, 2003 termination, approximately seven months after the September 2002 date on which plaintiff testified he told McKiddy of his belief that McKiddy was a racist. Plaintiff identifies no other event, and the record reflects no other event, which adversely affected his employment prior to his termination. In fact, it is not disputed that, in the interim, plaintiff was promoted to the rank of corporal and that McKiddy was a member of the department board which recommended plaintiff's promotion. Plaintiff's dep., defendant's Ex. E, p. 63, lines 1-7.

However, according to the evidence before the court, plaintiff later told Sgt. Bruce Reynolds that plaintiff believed McKiddy to be a racist, and that conversation occurred only a few weeks prior to plaintiff's termination. Reynolds dep., plaintiff's Ex. 21, p. 23, lines 21-25; p. 24, lines 1-24. Although Reynolds did not remember the exact date of this conversation, he testified that it was approximately two to three

weeks prior to plaintiff's termination. *Id.*, p. 24, lines 4-17. Reynolds testified that plaintiff told him his belief was based on McKiddy's "cotton picker" statement; plaintiff told Reynolds that he was offended by that comment, considered it a racist remark, and talked to McKiddy about it. Reynolds dep., p. 25, lines 1-15; p. 26, lines 1-5. At the time of this conversation, Reynolds was not plaintiff's immediate supervisor because Reynolds was attending a firearms training school; Reynolds had previously served as his supervisor and held a superior rank. *Id.,* p. 41, lines 3-16. Reynolds also testified that, within a week of his conversation with plaintiff, Capt. McKiddy told Reynolds that he knew plaintiff considered him a racist; Reynolds told McKiddy that he knew also plaintiff believed McKiddy was a racist. *Id.*, p. 29; p. 31, lines 19-25; p. 32, lines 1-13.      Although plaintiff's brief refers to his "continued complaints," and refers to his "reports" of "racial discrimination," *see* plaintiff's response brief at page 16, plaintiff's characterizations significantly exaggerate the evidence in the record. In fact, the only acts that could arguably be considered opposition to a discrimination are the two conversations described above.

Defendant argues that these conversations are not protected opposition because labeling a co-worker a racist is not a complaint about a discriminatory employment practice. *See* Little v. United Technologies, 103 F.3d 956, 959-60 (11th Cir. 1997). In Little, the court held that an employee's complaint about a co-worker's racially offensive comment was insufficient to constitute protected opposition because it was not a complaint about an employment practice. 103 F.3d at 959. Plaintiff criticizes this decision as one that "stands alone" and is an "erroneous holding." Plaintiff's sur-reply brief at p. 8. That plaintiff disagrees with Little does not, of course, render the decision erroneous. In fact, other courts considering retaliation claims based on an alleged opposition to a co-worker's statements have reached similar conclusions. *See, e.g.,* Wimmer v. Suffolk County Police Dept., 176 F.3d 125 (2d Cir.), *cert.*

*denied*, 528 U.S. 964 (1999). In Wimmer, the plaintiff alleged that he was terminated because he opposed what he believed was racism by other police officers; however, the court held that his opposition was not protected by Title VII because it was not directed at a discriminatory employment practice. 176 F.3d at 135. *See also* Silver v. KCA, Inc., 586 F.2d 138, 141-42 (9th Cir.1978) ("...not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual.")

Nevertheless, these decisions are factually distinguishable from this case because the plaintiffs therein complained about discriminatory comments by co-workers who were not supervisors having a role in employment decisions or about co-worker comments directed at non-employees. In contrast, plaintiff alleges that he believed Capt. McKiddy, his superior officer[9], was a racist based on McKiddy's comments. Although he never reported his belief to McKiddy's superior officers, he told both McKiddy Sgt. Reynolds of his belief. Where a racial slur is made by a supervisor rather than a co-worker, a plaintiff's opposition to same has been considered sufficient to constitute the opposition to a discriminatory employment practice required to establish the initial prong of a retaliation claim. *See* Alexander v. Gerhardt Enterprises, Inc., 40 F.3d 187, 195 (7th Cir. 1994); *see also* Rowland v. Franklin Career Services, LLC, 272 F. Supp.2d 1188, 1207 (D. Kan. 2003). The court concludes that his statements to McKiddy and his later statement to Reynolds about a racial remark made by a superior officer constitute opposition to a discriminatory employment practice. Plaintiff's evidence, albeit limited, is sufficient to constitute more than a "mere scintilla" of evidence that he engaged in opposition to discrimination.

---

[9]Although McKiddy was not plaintiff's immediate supervisor, his position was superior to that of plaintiff, and he was in the chain of command with respect to employment decisions.

To satisfy the second element of his *prima facie* retaliation claim, plaintiff must also present sufficient evidence that there is a causal connection between his comments to McKiddy and/or Reynolds and his subsequent employment termination. Although the required causal connection between the protected activity and the adverse employment action may be shown by circumstantial evidence, there must be close temporal proximity between the two events to support an inference of retaliatory motive. Candelaria v. EG & G Energy Measurements, Inc., 33 F.3d 1259, 1261-62 (10th Cir. 1994); Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U. S. 1071 (1982). This circuit has held that a period of more than three months between the protected activity and the adverse action, without more, is insufficient to satisfy the element of a causal connection. Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir. 1997). The lack of temporal proximity does not, however, necessarily defeat causation; instead, it requires plaintiff to provide additional evidence to support causation. Anderson v. Coors Brewing Company, 181 F.3d 1171, 1179 (10th Cir. 1999).

Plaintiff's September 2002 comment to McKiddy, approximately seven months prior to plaintiff's termination, is too removed from the termination date to satisfy the requirement of a causal connection to establish retaliation under this circuit's standard. However, plaintiff's conversation with Reynolds, a few weeks prior to his termination, is sufficiently close to constitute evidence of a causal connection. Moreover, McKiddy and Reynolds discussed plaintiff's belief during this same time period, and McKiddy was aware of plaintiff's opinion about him. The court concludes that plaintiff's evidence is sufficient to withstand summary judgment. Therefore, plaintiff has presented evidence sufficient to establish a *prima facie* case of retaliation.

Termination based on race discrimination:

To establish his *prima facie* case of discriminatory termination, plaintiff must show that: (1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination. Salguero, 366 F.3d at 1175. If he meets this burden, the defendant must "articulate a legitimate, nondiscriminatory reason" for his termination. *Id.* If defendant proffers such reason, the burden then shifts back to the plaintiff to present evidence showing that the defendant's proffered reasons are a pretext for racial discrimination. Salguero, 366 F.3d at 1175.

As a member of a protected class, plaintiff satisfies the first prong of his *prima facie* case. With respect to the second prong, while there is evidence of concern about his job performance within a short time prior to his termination, it is not disputed that he received no significant discipline until his termination and was, in fact, promoted to the rank of corporal approximately four months prior to his termination. Sgt. Reynolds testified that, while he served as plaintiff's supervisor, he regarded plaintiff's performance as "better than average." Reynolds dep., plaintiff's Ex. 21, p. 11, lines 15-25; p. 12, lines 1-16. Reynolds did not make a complaint about plaintiff until April 25, 2003, after plaintiff's termination; he did so only because Capt. McKiddy asked him to submit in writing a report of any counseling with plaintiff or any attitude problems Reynolds had previously observed. *Id.,* pp. 12-13. Similarly, then Lt. Gerald Moody[10], the superior officer to both plaintiff and Reynolds in the department chain of command, had not reported any previous performance problems and did not do so until Capt. McKiddy "instructed" him to submit a written report after plaintiff's termination. Moody dep., plaintiff's Ex. 20, p. 9, lines 9-25. While the

---

[10]At the time of plaintiff's termination, Moody was a lieutenant but has since been promoted to captain.

14

information cited by Sheriff Beggs as the reasons for his decision to terminate plaintiff reflects problems in plaintiff's job performance, there is sufficient evidence that he satisfactorily performing his job to create a material fact dispute on this issue.

Similarly, with respect to the second prong of plaintiff's *prima facie* case, the court concludes that plaintiff has offered sufficient evidence to create a fact dispute regarding his claim that his termination was discriminatory. As discussed herein, there is evidence that Sheriff Beggs made the termination decision because of reports concerning plaintiff's conduct and performance within a relatively short time period prior to his termination. *See* Beggs affidavit, defendant's Ex. A. However, there is also evidence that the reports on which Beggs relied reflected conduct that, according to the department's practice and procedure, normally would have been the subject of written disciplinary actions to which an officer would have been given an opportunity to respond. *See, e.g.,* Beggs dep., plaintiff's Ex. 16, pp. 23-26. There is also some evidence that at least some of the conduct on which Beggs based his decision did not usually warrant discipline. *See* Reynolds dep., plaintiff's Ex. 21, pp. 42-43; p. 44, lines 1-9; Moody dep., plaintiff's Ex. 20, p. 16, lines 24-25; p. 17, lines 1-13. The record also shows that one of the memos on which Beggs relied was written by McKiddy, and a second was submitted to McKiddy by another officer. *See* March 24, 2003 Memo to Capt. McKiddy from Detective Dunbar, Ex. 4 to Beggs Affidavit; April 15, 2003 Memo to Sheriff Beggs from Capt. McKiddy, plaintiff's Ex. 6. Thus, McKiddy, the superior officer who plaintiff had accused of making a racist remark, was involved in at least two of the three memoranda on which Beggs based his decision to terminate plaintiff. Furthermore, Beggs was unable to identify any other officer who had been terminated for the type of conduct outlined in the memos on which he relied in deciding to terminate plaintiff. Beggs dep., plaintiff's Ex. 16, p. 82, lines 7-25; p. 83, lines 1-25; p. 84, lines 1-25; p.

15

85, lines 1-4.

The court finds that there is sufficient evidence to create a factual dispute regarding whether plaintiff can show his termination was the result of race discrimination. Inasmuch as there are material fact disputes regarding plaintiff's claim of discriminatory termination, the court cannot conclude that plaintiff is unable to establish his *prima facie* case. Summary judgment is therefore inappropriate on that basis.

Evidence of pretext:

Defendant also argues that, even if plaintiff can establish a *prima facie* case of discriminatory retaliation or termination, it is entitled to judgment because its reasons for terminating plaintiff were justifiable and non-discriminatory. Plaintiff contends that there is sufficient evidence of pretext to submit this issue to a jury.

Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997). "Summary judgment is warranted only if plaintiff has 'failed to produce any evidence from which a reasonable inference could be drawn' that the defendant's proffered reasons were pretextual." Salguero v. City Of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004), *quoting* Foster v. Alliedsignal, Inc., 293 F.3d 1187, 1196 (10th Cir.2002).

Defendant's proffered reason for terminating plaintiff is that plaintiff engaged in "contemptuous, disrespectful, neglectful and insubordinate behavior." Beggs Affidavit, defendant's Ex. A. Such reasons are non-discriminatory grounds for dismissal. Thus, plaintiff must produce evidence from which a

reasonable inference could be drawn that these reasons are pretextual. Because the issue of pretext applies to both claims in this case, the evidence in the record is applicable to both.

With respect to the reasons given by Sheriff Beggs for plaintiff's termination, the court concludes that the record contains sufficient evidence to create a material fact dispute regarding the validity of these reasons. As discussed above, it is not disputed that plaintiff was not given a reason for his termination even when plaintiff asked why he was being terminated. Further, as plaintiff notes, there is evidence in the record to show that the Sheriff did not apply the established disciplinary procedures to plaintiff, as plaintiff was not shown the written memoranda on which the Sheriff based his decision and was not asked to respond to the complaints reflected in those memoranda. As plaintiff points out, a departure from established practice and procedure provides some evidence of pretext. Doeble v. Sprint/United Management Co., 342 f.3d 1117, 1138 n. 11 (10th Cir. 2003).

There is also evidence that Capt. Moody, who was one of plaintiff's superiors, did not believe that the conduct he observed warranted serious disciplinary action. Moody dep., plaintiff's Ex. 20, p. 12, lines 18-25; p. 19, lines 11-25; p. 20, lines 1-15. There is also evidence that a disciplinary action was usually initiated by an officer's immediate supervisor, whose recommendation was then reviewed by the supervisor's superior; that procedure was admittedly not followed in this case. Reynolds dep., plaintiff's Ex. 21, p. 22, lines 10-25; Moody dep., plaintiff's Ex. 20, p. 23, lines 21-25-p. 24, line 1; pp. 25-28.

The record also shows that plaintiff was not asked to respond to the negative reports upon which Beggs relied, was not shown the documents reflecting those reports, and was not informed of the complaints discussed therein. Courts have regarded such practice as suspect and, accordingly, have determined it constitutes some evidence of pretext. *See* Bassett v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir.

17

2000); Warren v. Halstead Industries, Inc., 802 F.2d 746, 759 n. 18 (4th Cir. 1986).

Furthermore, Sheriff Beggs sought to obtain written documentation of negative comments about plaintiff's performance after plaintiff was terminated. According to Sgt. Reynolds, he was asked to submit such documentation by Capt. McKiddy, who did not explain the reason for his request. Reynolds dep., plaintiff's Ex. 21, p. 12, lines 21- 25, p. 13, lines 1-14; p. 15, lines 12-25, p. 16, lines 1-8. Capt. Moody also testified that McKiddy asked him to submit post-termination documentation about plaintiff's performance. Moody dep., plaintiff's Ex. 20, p. 9, lines 15-25. Such conduct creates a suspicion of the validity of the reasons for termination, and is thus considered evidence of pretext. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

The court concludes that plaintiff's evidence is adequate to create a material fact dispute on the issue of pretext, and such issue is properly considered by the jury. Accordingly, the evidence is sufficient to withstand defendant's motion for summary judgment.

The court also notes defendant's contention that, after plaintiff's termination, defendant learned of other facts that might have warranted his termination. These include plaintiff's failure to disclose civil litigation pending or previously filed against him. The department has a written policy requiring all employees to notify the Sheriff of civil actions in which the employee becomes involved. Defendant's Exhibit 1, p. 47. Plaintiff did not notify Beggs of the actions pending against him.

As plaintiff points out, this evidence could not have motivated the decision to terminate him because it is "after acquired" evidence. Defendant does not argue that it would have terminated plaintiff on the basis of the information regarding the two lawsuits and the child support enforcement action. Sheriff Beggs testified that he had never terminated an employee for failing to report civil litigation. Beggs dep., plaintiff's Ex. 16,

p. 69, lines 4-10.

As a general rule, after acquired evidence generally applies only as a defense to liability in a "mixed motives" action and only where the defendant proves that the after-acquired evidence alone would have caused the termination. *See* McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 359 (1995). In other cases, after-acquired evidence is not a defense to liability but applies only to the scope of the remedy in the event that the plaintiff prevails. *Id.*; *see also* Roalson v. Wal-Mart Stores, Inc., 10 F. Supp. 2d 1234, 1235 (D. Kan. 1998) (noting the Tenth Circuit's rejection of after-acquired evidence as a defense to liability following McKennon). The court agrees that this evidence does not directly impact the motion for summary judgment which addresses only liability, although the issue may arise in connection with the remedies which could be available to plaintiff.

In accordance with the foregoing, the defendant's motion [Doc. No. 70] to strike evidentiary material is DENIED. Defendant's motion for summary judgment [Doc. No. 37] is DENIED on plaintiff's claims of unlawful retaliation for opposition to racially discriminatory employment practices and for discriminatory termination. Those claims are based on disputed material facts which are properly resolved by a jury. To the extent that the complaint alleges a claim based on a discriminatory failure to promote, plaintiff has expressly withdrawn such claim. To the extent that the complaint alleges a claim based on a failure to promote or a hostile work environment based on race, defendant's motion is GRANTED as to that claim. This action will proceed accordingly.

IT IS SO ORDERED this 22nd day of September, 2005

RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE